UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BEALER,<br>as Heir and Representative of the<br>Estate of Tonia Marie Bealer,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>          Defendant. | Case No. EDCV 13-1450 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I.    SUMMARY**

On August 15, 2013, plaintiff Brian Bealer ("plaintiff"), heir of Tonia Marie Bealer[1] ("claimant") and representative of the claimant's estate, filed a Complaint seeking review of the Commissioner of Social Security's denial of claimant's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

///

---

[1] Upon the death of the claimant Tonia Marie Bealer, her widower Brian Bealer was substituted in as a party in the underlying administrative proceedings. (Administrative Record ("AR") 7).

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 23, 2013 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 9, 2010, the claimant filed an application for Disability Insurance Benefits. (AR 23, 131). The claimant asserted that she became disabled on May 6, 2009, due to agoraphobia, rapid cycling bipolar disorder, anxiety, fear of men when alone with them, severe depression and mania, and panic attacks with chest pains. (AR 157-58). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from the claimant (who was represented by counsel) and a vocational expert on February 1, 2012. (AR 38-63).

On April 10, 2012, the ALJ determined that the claimant was not disabled through the date of the decision. (AR 23-33). Specifically, the ALJ found: (1) the claimant suffered from severe impairments of bipolar disorder and alcohol dependence in questionable remission, and nonsevere impairments of hypertension and back pain (AR 25-26); (2) the claimant's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 26-28); (3) the claimant retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to occupations involving non-public, simple and repetitive tasks, with only occasional interaction with coworkers and supervisors, and no teamwork (AR 28); (4) the claimant could not perform her past relevant work (AR 32); (5) there are jobs that exist in significant numbers in the national economy that the claimant could perform, specifically office helper,

hand packager, and mail clerk (AR 32-33); and (6) the claimant's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 29).

The Appeals Council denied the claimant's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///

|   |   |   |
|---|---|---|
| 1 | (4) | Does the claimant possess the residual functional capacity to |
| 2 | | perform claimant's past relevant work?  If so, the claimant is |
| 3 | | not disabled.  If not, proceed to step five. |
| 4 | (5) | Does the claimant's residual functional capacity, when |
| 5 | | considered with the claimant's age, education, and work |
| 6 | | experience, allow the claimant to adjust to other work that |
| 7 | | exists in significant numbers in the national economy?  If so, |
| 8 | | the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that the ALJ improperly evaluated the credibility of claimant's subjective complaints. (Plaintiff's Motion at 9-20). The Court agrees. As the Court cannot find that the ALJ's errors were harmless, a remand is warranted.

### A. Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the

claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find a claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling 96-7p. Although an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his or her credibility assessment. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger, 464 F.3d at 972. Accordingly, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### B. Pertinent Facts

In a function report dated May 18, 2010, the claimant stated, in part, that due to her psychological symptoms she (i) had "acute bouts of unrational [sic] thinking and hysterical fits lasting for days" after which she "[did] not really remember what happened"; (ii) became "anxious to the point of throwing up on several occasions" but could not take "traditional anxiety" medication due to her "past addiction problems"; (iii) cried "for stupid things" (*e.g.*, television commercials) and "constantly" needed to "compose" herself; (iv) sometimes could not get out of bed for anything except driving her son to/from school; and (v) could leave the house only to take her son to and from school and to go to her

doctor's appointments.  (AR 168-73).  The claimant also stated that her medication "types and dosages" had not yet been "properly established."  (AR 173).

At the hearing, the claimant testified, in part, that she (i) had been fired from her job due to "lack of attendance" (*i.e.* missing work more than four days per month) and other performance issues stemming from her bipolar disorder; (ii) could not leave her house except to drop her child at school (and return directly home) and to attend doctor's appointments; (iii) had groceries delivered because grocery shopping "freak[ed] [her] out"; and (iv) didn't like crowds.  (AR 47-52).  The claimant also testified that, while the medication she took for bipolar disorder would "help[]," it made her "groggy during the day."  (AR 54).

### C. Analysis

Here, the ALJ found that the claimant's statements concerning her subjective symptoms and limitations were "not credible to the extent they [were] inconsistent with the [ALJ's] residual functional capacity assessment."  (AR 29).  Nonetheless, the ALJ did not provide clear and convincing reasons for discounting the claimant's credibility, and the Court cannot find that the ALJ's errors were harmless.

First, the ALJ discounted the alleged severity of the claimant's subjective complaints as inconsistent with the claimant's "somewhat normal level of daily activity."  (AR 30).  The ALJ's findings in this respect, however, are not supported by substantial evidence.  For example, the ALJ noted that the claimant said she could "shop and manager her finances without assistance."  (AR 27) (citing Exhibit 3E at 2 [AR 169]).  In her function report, however, the claimant actually stated that she would shop only by computer (for things her husband could not buy) "maybe once every month or two" for five minutes or less, and that she was able to "autopay" her bills online, but could *not* use a checkbook "to keep track of spending."  (AR 169).  In addition, the claimant testified at the hearing that she had her groceries delivered because grocery shopping "freak[ed] [her] out."  (AR

52).  The ALJ also wrote that, while the "claimant stated she experienced anxiety in social situations, she admitted she was able to go out alone," and that the claimant was able to drive her son to and from school, and drive herself to doctor's appointments.  (AR 27, 30).  In her function report, however, the claimant actually said that she went out "alone" <u>only</u> to take her son to/from school "some days" or to go to "monthly" doctor's appointments.  (AR 168-70).  The claimant also stated that sometimes she would stay in bed all day except to drive her son.  (AR 168).  Similarly, at the hearing the claimant testified that she could only leave the house on her own to "take one child to school, drop him off and turn around and come right back home," and to "go to Dr. Patel's."  (AR 52).  The ALJ also wrote that, contrary to the claimant's allegations that she had difficulty with concentration, the claimant "admitted she watched television and read books."  (AR 30).  In her function report, however, the claimant actually said that she would read only "on rare occasions," and that she watched television because she was "bored[]."  (AR 168, 170).  Also, while the ALJ observed that the claimant had the ability to "spen[d] time" with family, in her function report the claimant stressed that her "only interaction" was with "immediate family" members (*i.e.*, her husband and two children with whom she lived).  (AR 168, 170; <u>see</u> AR 56).  As the ALJ also wrote, the claimant told an examining psychiatrist that she was able to shower, bathe, groom, and dress herself without assistance.  (AR 27) (citing Exhibit 4F at 2 [AR 332]).  Consistent with the statements in her function report, however, the claimant also told the examining psychiatrist that during a "typical day" she "watches TV, reads and occasionally plays cards with her son."  (AR 332).

      Moreover, even assuming that the claimant retained the ability to carry on certain minimal activities of daily living (*i.e.*, grooming and dressing herself, taking short car trips to the doctor and her son's school, and interacting with immediate family members in her home), the ALJ did not find, nor does the record reflect, that such activities "consume[d] a substantial part of [the claimant's] day,"

and thus such evidence does not constitute a clear and convincing reason for discounting the claimant's credibility. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted); see also id. at 1049 ("One does not need to be 'utterly incapacitated' in order to be disabled.") (citation omitted); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.") (citations omitted); Fair, 885 F.2d at 603 ("Many home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

      Second, the ALJ also found that the "[claimant's] treatment has been essentially routine and conservative in nature." (AR 30). Receipt of only conservative treatment can undermine a claimant's complaints of debilitating symptoms. See, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."), cert. denied, 552 U.S. 1141 (2008) (citation omitted). Here, however, the ALJ's findings in this respect are not supported by substantial evidence in the record. For example, the ALJ wrote that "the claimant's treating psychiatrist ordered the claimant to continue her medications, noting that her symptoms were stable and that she was doing relatively well without any mention of medication side effects." (AR 31). Treatment records, however, reflect that the claimant's treating psychiatrist actually adjusted the type, number, and/or dosage of the claimant's multiple medications almost every month since May 6, 2009 (*i.e.*, the alleged onset date). (AR 489-91). In addition, although the treating psychiatrist regularly checked a box on the treatment note form which indicated that the claimant was "symptomatic but stable" with medication, the same treatment notes still reflect,

///

///

with minor exceptions,[2] that the claimant routinely experienced psychological symptoms consistent with her subjective complaints (see, e.g., AR 442 [1/26/12 progress note: claimant has increased racing thoughts, is anxious, unable to sleep more than three hours per night, and "easily overwhelmed"]; AR 447 [9/22/11 progress note: claimant "couldn't leave home [for a week]"]; AR 448 [8/25/11 progress note: claimant "still [has] problems getting out of the house," when in a crowd she "wants to leave quickly," and she "[d]oesn't go grocery shopping"]; AR 465 [8/26/10 progress note: claimant "doesn't like to leave the house much"]), and also reflected mental status examinations with multiple abnormalities in the claimant's mental functioning (*i.e.*, behavior, mood, affect, thought process/content, cognition, judgement/insight).  (AR 440-81).  Moreover, contrary to the ALJ's conclusion that the "[claimant's] treating psychiatrist did not note any [medication] side effects" (AR 30, 31) (emphasis added), progress notes from the claimant's treating psychiatrist reflect various times when the claimant's medication reportedly caused "sedation" (AR 446 [October 20, 2011]), caused "heartburn" (AR 466 [July 29, 2010]), needed to be adjusted due to side effects

---

[2]For example, as the ALJ noted, an April 9, 2010 "Clinical Note" indicated that the claimant's "manic depressive illness [was] doing relatively well" (AR 278), and an October 20, 2010 progress note stated that the claimant was "[s]table on Depakote and lamictal for bipolar" (AR 403).  Nonetheless, on April 9, 2010, the claimant's primary complaint was "symptoms compatible with allergic rhinitis" which the internal medicine physician treated with "Flonase inhaler."  (AR 278).  On October 20, 2010, the claimant primarily sought treatment for "back pain" and a "blood pressure check," and the Riverside Medical Clinic physician, among other things, ordered physical therapy and medication for pain, a refill of the claimant's blood pressure medication, and only blood testing "for monitoring of Depakote" (*i.e.*, one of the claimant's medications for bipolar disorder).  (AR 403).  The Court cannot conclude, as the ALJ's decision seems to suggest (AR 30-31), that these isolated treatment notes from general practitioners reasonably reflect that the claimant's psychological symptoms were sufficiently managed by medication.  Cf. Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ may not "selectively focus[] on [evidence] . . . which tend[s] to suggest non-disability"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for ALJ to disregard or misinterpret competent evidence in the record in order to support conclusion).

(AR 460 [November 18, 2010], 470 [March 11, 2010]), or caused an increase in appetite (AR 462 [September 30, 2010]).

In light of the foregoing, the Court cannot conclude that the ALJ's finding that the claimant's psychological treatment was "routine and conservative" is supported by substantial evidence. See Regennitter v. Commissioner of the Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support an adverse credibility determination); cf. Valenzuela v. Astrue, 247 Fed. Appx. 927, 929 (9th Cir. 2007) (finding ALJ's credibility determination unsupported by substantial evidence where it was based in part on "inaccurate characterization" of claimant's testimony).

Third, the ALJ also determined that the objective medical evidence does not support the claimant's subjective complaints. (AR 30). As detailed above, however, the ALJ did not provide any other clear and convincing reason for discounting the claimant's credibility. Lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony. See Burch, 400 F.3d at 681.

Finally, the Court cannot conclude that the above errors were harmless because it cannot "confidently conclude that no reasonable ALJ, when fully crediting [the claimant's statements and] testimony, could have reached a different disability determination." Stout, 454 F.3d at 1055-56. Therefore, remand is warranted to permit the ALJ to reassess claimant's credibility based on the record before it.

///
///
///
///
///

V.  **CONCLUSION**[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 21, 2014

                                    /s/                                   
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[4] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); see also Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remand is an option where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).